## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Alyssa Wright | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| Central Bucks School District | : | No.: 25-5392 |
| Susan Gibson | : | |
| Karen Smith | : | |
| Rob Dugger | : | |
| Rick Haring | : | |
| Heather Reynolds | : | |
| Dana Foley | : | |
| Daniel Kimicata | : | |
| Jenine Zdanowicz | : | |
| | : | |
| Defendants. | : | |
| | : | |

### PROPOSED ORDER

IT IS HEREBY ORDERED, this _____ day of _____, 20___, upon consideration of Defendants' Motion to Dismiss Plaintiff's Complaint for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED.

_____
, Judge

**CLARKE GALLAGHER BARBIERO**
**AMUSO & GLASSMAN LAW**
Peter Amuso, Esquire
Attorney ID No. 80182
Leslie De Leon, Esquire
Attorney ID No. 335779
1300 Virginia Drive, Suite 405
Fort Washington, PA  19034
Tel: (215) 633-1890; Fax: (215) 633-1830
pamuso@cgbaglaw.com
ldeleon@cgbaglaw.com                    *Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Alyssa Wright | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION |
| | : | |
| Central Bucks School District | : | No.: 25-5392 |
| Susan Gibson | : | |
| Karen Smith | : | |
| Rob Dugger | : | |
| Rick Haring | : | |
| Heather Reynolds | : | |
| Dana Foley | : | |
| Daniel Kimicata | : | |
| Jenine Zdanowicz | : | |
| | : | |
| Defendants. | : | |

## <u>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH SUPPORTING MEMORANDUM OF LAW IN ACCORDANCE WITH RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Central Bucks

School District (the "District"), and individual school board members Susan Gibson, Karen Smith,

Rob Dugger, Rick Haring, Heather Reynolds, Dana Foley, Daniel Kimicata, and Jenine Zdanowicz

(collectively referred to as "Defendants"), hereby respectfully move this Honorable Court to

dismiss Alyssa Wright's ("Plaintiff") Complaint for failure to state a claim for which relief can be

granted. In support of its motion, Defendants are filing the accompanying Memorandum of Law and aver as follows:

## Factual Background

1. On July 25, 2023, Plaintiff entered into a five-year employment contract ("Contract") with the District to serve as the Director of Pupil Services. See Exhibit A, Employment Contract.

2. Policy 113.2 of the Central Bucks School District provides: "[t]he Superintendent or designee shall maintain and report data on the use of restraints," and "[t]he Director of Special Education or designee shall notify the parent/guardian as soon as practicable of the use of restraints to control the aggressive behavior of the student and shall convene a meeting of the IEP team within ten (10) school days of the use of restraints, unless the parent/guardian, after written notice, agrees in writing to waive the meeting. At this meeting, the IEP team shall consider whether the student needs a functional behavioral assessment, re-evaluation, a new or revised Positive Behavior Support Plan, or a change of placement to address the inappropriate behavior." See Exhibit B, CBSD Policy 113.2.

3. In accordance with her Contract, Plaintiff's duties and responsibilities included: maintaining records and preparing reports for the Pennsylvania Department of Education; ensuring district compliance with state and federal standards and regulations relating to the operation of special services programs; supervising development, implementation, and evaluation of curricular programs for students with special needs; supervising and evaluating performance of assigned special education supervisors and office staff, and assisting building administrators with decisions, supervision and evaluation regarding pupil services staff. See Exhibit A, Employment Contract.

4. Plaintiff further agreed to obtain advanced approval from the Board before undertaking any outside speaking engagement. Id. at 2.

5. During her time as the Director of Pupil Services, Plaintiff had a statutory obligation as a mandated reporter under the Child Protective Services Law to report suspected child abuse to Children & Youth Services. 23 Pa.C.S.A. § 6311(a)(4), § 6313.

6. On November 14, 2024 at approximately 6:30pm, Wright received a call from Deneen Dry ("Dry"), the CBESPA President and full-time staff nurse "to seek understanding of special education classroom behaviors/protocols." See Plaintiff's Complaint, Exhibit E, ¶¶ 5 – 8

7. Dry informed Plaintiff that Personal Care Assistant Alyssa Kline ("Kline") raised personnel concerns and student concerns in a low-incident autistic support classroom. Specifically, Dry informed Plaintiff that: a student had been on the toilet for so long that a red ring appeared on the back of her thighs and buttocks, a student's bodily movement was restricted to his workstation, a student was permitted to masturbate in the bathroom while the Personal Care Assistant watched, and a student regularly hit other students. Id.

8. On November 16, 2024, Plaintiff received an e-mail (the "November 16th E-mail") from former Human Resources Manager Chrstine Trawinski ("Trawinski") containing Kline's detailed and explicit concerns over the manner in which students in an Autistic Support Classroom ("Classroom") at Jamison Elementary School were being treated by the Special Education Teacher ("Teacher") and the Education Assistant ("EA"). See Exhibit C, November 16th E-mail.

9. The November 16th E-mail alerted Plaintiff that:

   a. "Student [1] was allowed to:

      i. sit naked on the rug in the classroom.

      ii.  self-stim in his workstation, sometimes using his spit on his genitals.

     iii.  sit naked at his workstation.

     iv.  go to the bathroom to disrobe and masturbate sometimes 3-4 times a day.

      v.  walk naked from his workstation to the bathroom to be redressed;" and

b. "Student [1] had stood naked at the window in the classroom. [Student 1] is restricted from having water – per [Teacher's] direction he is not allowed to use the water fountain, his water bottle is kept away from him;" and

c. "As a punishment for negative behaviors, [Student 1] is made to sit in his workstation with the triangular table set up against the back of his chair. [EA] placed her feet on the table legs to prevent [Student 1] from moving. The situation continues for a long time, during which [EA] is on her personal cell phone. Student [2]. [sic] is also made to in his workstation with a table behind him and the EA holding it in place;" and

d. "[Student 1] has gagged himself at his workstation and spread his spit over himself and the table. He was made to sit in the spit for 30 minutes while he finished his lesson;" and

e. "[Student 1] uses the 'comfy chairs' in the room to lay face down on and self-stim. Part of his body is on one chair; his face is on another. [Teacher] has pulled the chair from under his face to force him to roll over;" and

f. "[Teacher] and [EA] frequently scream very loudly at [Student 1];" and

g. "On the playground [Student 1] removed his shoes. [EA] does not want him to do that, takes his shoes and moves them to the slide to force [Student 1] to walk across wood chips to get his shoes. She said, 'that will teach him to take his shoes off.'"

<u>See</u> Exhibit C, November 16th E-mail.

10. Plaintiff did not submit a Childline report on November 16, 2024.

11. Plaintiff never reported the suspected child abuse to Children & Youth Services.

12. The District investigated the allegations of abuse and neglect ("Internal Investigation") reported in the November 16th E-mail.

13. On December 12, 2024, Plaintiff received the District's findings (hereinafter referred to as the "December 12th Report") of the Internal Investigation validating multiple concerns listed in the November 16th E-mail. See Exhibit D, December 12th Report, p. 2.

14. The December 12th Report confirmed that:

   a. a "student was permitted to remain undressed and masturbate in the classroom and the bathroom;" and

   b. "...a student was restricted from accessing water...;" and

   c. "...the Education Assistant was observed restraining students by placing a student in their workstation then maneuvering other tables or stations in a manner to limit the student from eloping or violently pushing the tables into other students or staff...on occasion the Educational Assistant was observed sitting on top of the table or placing their feet upon the legs of the tale to achieve this restraint;" and

   d. "...Teacher and Educational Assistant were loudly speaking to or yelling at students;" and

   e. "...Teacher and Educational Assistant were reported to make inappropriate comments and mock students." Id.

15. Plaintiff did not report the use of restraints to the Pennsylvania Department of Education ("PDE") nor ensured that the restraints were properly reported as required under her contractual duties. See Exhibit A, Employment Contract, Position Description.

16. After receiving the December 12th Report, Plaintiff does not deny that she failed to timely schedule an IEP meeting for Student 1, failed to revise Student 1's IEP to address his behaviors, and failed to inform parents of the confirmed use of restraints.

17. On January 22, 2025 and January 23, 2025, PDE conducted an on-site fact-finding investigation into the allegations of inappropriate restraints utilized in the Classroom at Jamison Elementary School. See Exhibit E, PDE RISC Report.

18. On February 10, 2025, PDE issued the following findings:

   a.  "The LEA used restraints during the 2024-2025 school year when…Classroom staff used desks to wedge Student 1 and Student 2 in their chairs against the wall, thereby applying physical force to them to restrain their free movement." Id. at 5.

   b.  "The LEA inappropriately used aversive techniques for handling behavior when…Classroom staff denied Student 1's access to water to deter him from urinating and put Student 1 and Student 2 in places from which they could not readily exit to deter them from hitting and disrobing, as prohibited by 22 Pa. Code § 14.133(e)." Id.

   c.  "The LEA failed to report the restraints that occurred in…Classroom to the BSE, as required by 22 Pa. Code § 14.133(c)(5)." Id.

   d.  "The LEA failed to follow appropriate procedures, such as conducting an IEP meeting within 10 school days of the restraints or obtaining the parents' waiver of their rights to an IEP meeting upon using restraints in…Classroom, as required by 22 Pa. Code § 14.133(c)(1)." Id.

   e.  "The LEA failed to ensure that Student 1's IEP team revised his IEP, as appropriate, to address his behaviors, as required by 34 CFR § 300.324(b)(1)(ii), when the IEP team discussed the student's progress and IEP revisions during monthly communication meetings but did not revise his IEP." Id.

   f.  The LEA failed to implement the PBSPs of Student 1 and Student 2, as required by 34 CFR § 300.17, when the students were restrained." Id.

19. Defendants hired an outside attorney, Leigh Dalton, Esq. ("Attorney Dalton"), to re-examine the Initial Investigation to investigate whether administrators, including Plaintiff, responded properly to the allegations of neglect and abuse. See Plaintiff's Complaint, ¶ 54; see also Exhibit H, February 26, 2025 Facebook Post.

20. On February 26, 2025, Plaintiff reached out to Defendant Gibson inquiring about the appropriate method of reporting concerns. Id. at ¶ 51.

21. Defendant Gibson provided Plaintiff with multiple avenues to safely address her concerns, including contacting the District's counsel if her concerns related to former Superintendent Steven Yanni ("Yanni") and former Principal of Jamison Elementary School David Heineman ("Heineman"). Id.

22. On March 3, 2025, Plaintiff took Defendant Gibson's suggestion and sent a letter (hereinafter referred to as the "March Letter") to her boss at the time Yanni, Attorney Dalton, the District's former solicitor, the former Director of Human Resources, and Defendant Gibson raising multiple complaints against administrators involved in the Initial Investigation. See Plaintiff's Complaint, Exhibit A.

23. The March Letter begins by noting that Plaintiff retained Karpf, Karpf, & Cerutti, P.C., in part, "in anticipation of potential litigation." Id. at 1.

24. In the letter, Plaintiff accused multiple administrators of concealment, improper reporting to Childline, and other wrongdoing concerning the Internal Investigation into the allegations of abuse at Jamison Elementary School.

25. Plaintiff noted in the March Letter that the "12/12/2024 factfinding memorandum concluded (among other conclusions) that children were subjected to restraint, had tables 'violently pushed' into them and this was later confirmed by [PDE]." Id. at 10.

26. Plaintiff also emphasized her belief that any potential adverse action taken against her will be seen as retaliatory due to her reports of sexual harassment from September 2024 – March 2025. Id. at 11.

27. Plaintiff alleged that from September 2024 – March 2025, she complained of sexual harassment by Defendant Smith and complained of sexual harassment by Kevin Marton, a District employee and Plaintiff's ex-husband. Id.

28. Plaintiff concluded with "[t]his letter is intended to serve…as an **EXHIBIT** (in litigation, if necessary) of a formal complaint that Wright is lodging as of this date in the event that she is disciplined, blamed, terminated, or faces any other adverse action impacting her career." Id. at 13.

29. On March 18, 2025, Plaintiff participated in a speaking engagement without approval of the Board. See Plaintiff's Complaint, ¶ 99.

30. On June 11, 2025, the District sent Plaintiff a Loudermill Notice containing a drafted statement of charges with supporting exhibits informing her of the allegations against her and providing Plaintiff the opportunity to respond. See Exhibit F, Loudermill Notice.

31. On June 18, 2025, the Board of School Directors (the "Board") voted to issue a Statement of Charges against Plaintiff for her failure to adequately respond to the allegations of abuse and neglect in the Classroom. See Plaintiff's Complaint, Exhibit B.

32. Plaintiff was terminated on August 25, 2025 for willful neglect of duty, persistent negligence in the performance of her duties, and persistent and willful failure to adhere by the laws of this Commonwealth. See Exhibit G, Plaintiff's Adjudication.

33. The District also terminated the former Superintendent Yanni and the former Principal of Jamison Elementary School Heineman for their failure to handle and adequately respond to the allegations of abuse in the Classroom. See Plaintiff's Complaint, ¶ 100.

**Consideration of Exhibits A - H**

34. In deciding a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) ("a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment'"); Alston v. Wenerowicz, 167 F. Supp. 3d 714, 718 (E.D. Pa. 2016)

(courts may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

35. In <u>Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.</u>, the Third Circuit considered a contract attached to a motion to dismiss but not to the plaintiff's complaint where the complaint was "based on this contract and describe[d] some of its terms." 998 F.2d 1192, 1196 (3d Cir. 1993). The Third Circuit reasoned, "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." <u>Id</u>.

36. Here, Defendants attached the following exhibits to this Motion to Dismiss: Exhibit A, Plaintiff's Employment Contract; Exhibit B, CBSD Policy 113.2; Exhibit C, November 16th E-mail; Exhibit D, December 12th Report; Exhibit E, PDE RISC Report; Exhibit F, Loudermill Notice; Exhibit G, Plaintiff's Adjudication; and Exhibit H, February 26, 2025 Facebook Post.

37. Exhibits A, C, D, E, and F may be considered by this Court because these documents are undisputedly authentic and explicitly relied and/or integral to Plaintiff's Complaint.

38. Exhibits B, E, G, and H may also be considered as public records. In <u>Arizmendi v. Lawson</u>, this Court considered a letter issued by the EEOC, the authenticity of which was undisputed, in deciding a motion to dismiss. 914 F. Supp. 1157, 1160 (E.D. Pa. 1996); <u>see also</u> <u>Pension Benefit Guar. Corp.</u>, 998 F.2d at 1197 (explaining that "public record[s]" in this context are materials like decision letters of government agencies and published reports of administrative bodies).

## <u>Motion to Dismiss Count I – Title VII Retaliation</u>

39. To make out a prima facie case of retaliation under Title VII, a plaintiff must show (1) that she engaged in protected activity; (2) that she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. <u>Carvalho-Grevious v. Del. State Univ.</u>, 851 F.3d 249, 257 (3d Cir. 2017).

40. To establish causation, a Plaintiff must show one of four things: (1) a "temporal proximity" between the protected activity and adverse action that is "unusually suggestive of retaliatory motive," (2) a "pattern of antagonism" towards plaintiff after the protected activity, (3) inconsistencies in the employer's explanations for the adverse action, or (4) other facts from which the Court could infer causation. <u>Carvalho-Grevious v. Del. State Univ.</u>, 851 F.3d at 260.

41. Causation may not be established by an employee's conclusory perception of how others treated her after making a report of alleged wrongdoing. <u>See</u> <u>Javitz v. Luzerne Cnty.</u>, 293 A.3d 570, 582 (Pa. 2023).

42. The timing of an alleged retaliatory action "must be unusually suggestive of retaliatory motive before a causal link will be inferred." <u>Williams v. Philadelphia Hous. Auth. Police Dep't</u>, 380 F.3d 751, 760 (3d Cir. 2004).

43. "Days are suggestive; months are not." <u>Rosati v. Colello</u>, 94 F. Supp. 3d 704, 717 (E.D. Pa. 2015).

44. At a minimum, Plaintiff must plead enough facts to raise a reasonable expectation that discovery will reveal evidence of causation. <u>Connelly v. Lane Const. Corp.</u>, 809 F.3d 780, 789 (3d Cir. 2016).

45. Plaintiff alleged that her reports of sexual harassment began in September 2024. Plaintiff was placed on paid administrative leave in May 2025. Therefore, approximately eight months lapsed between when the alleged protected activity began and any adverse action against Plaintiff. A period of approximately eight months is not suggestive of retaliatory motive. Rosati, 94 F. Supp. 3d at 717.

46. Plaintiff further failed to allege facts to show an inconsistent explanation for her termination. In fact, the District's employment concerns with Plaintiff remained consistent from the moment her statement of charges were issued to the Board's decision to terminate Plaintiff. Compare Plaintiff Complaint, Exhibit B with Exhibit G, Plaintiff's Adjudication.

47. Accordingly, Plaintiff failed to allege sufficient facts to support Count I.

## Motion to Dismiss Count II – Whistleblower Law

48. The Whistleblower Law precludes a public body from taking any adverse employment action against an employee in retaliation for the employee's good faith report of wrongdoing or waste. 43 P.S. § 1423(a).

49. A good faith report is defined as "a report of ... wrongdoing or waste which is made **without malice or consideration of personal benefit** and which the person making the report has reasonable cause to believe is true." 43 P.S. § 1422 (emphasis added).

50. An employer may take "disciplinary action against the employee who completed the report if the employee's report was submitted in bad faith." Id.

51. An employee must also show a causal connection between the report of wrongdoing and the adverse employment action to be protected under the Whistleblower Law. Javitz, 293 A.3d at 579.

52. In <u>Albright v. City of Philadelphia</u>, this Court held that a former employee did not support her Whistleblower Act claim because she failed to make a good-faith report of wrongdoing. This Court determined that the former employee's complaint under Title VII was made in consideration of personal benefit and therefore was not a good faith report. 399 F. Supp. 2d 575, 596 (E.D. Pa. 2005) ([i]f Albright's complaints constituted a good faith report for the purposes of the Whistleblower Act, every retaliation claim under Title VII or PHR involving a public employer would trigger the application of the act, clearly not within the plain statutory language excluding "consideration of personal benefit" from protection under the statute).

53. Here, in accordance with <u>Albright</u>, Plaintiff's complaints of sexual harassment under Title VII were not a good faith report under the Whistleblower Law. Also, The March Letter was not made in good faith as Plaintiff made it clear that the March Letter was created for her personal benefit in anticipation of any adverse action taken against her.

54. Even if this Court finds that Plaintiff made a good faith report, Plaintiff failed to adequately allege causation.

55. As Plaintiff concedes, other administrators were terminated for their actions and failure to act upon learning of the allegations of abuse in the Classroom. <u>See</u> Plaintiff's Complaint, ¶ 100.

56. Plaintiff further failed to allege any antagonism after her February 26, 2025 communications with Defendant Gibson, rather stating in a conclusory manner that "[a]s of February 26, 2025, Plaintiff was being retaliated against by Yanni and Freiling". <u>Id</u>. ¶ 52.

57. As demonstrated in the text exchange between Plaintiff and Defendant Gibson, Plaintiff was provided with an alternative method to safely report concerns against other administrators by contacting District counsel, which she did a few days later through the March Letter.

58. The temporal proximity between Plaintiff's first report of sexual harassment and her placement on administrative leave was approximately eight months. The temporal proximity between the March Letter and her placement on administrative leave was approximately two months apart. The temporal proximity of the two events is not so close as to be unduly suggestive of a retaliatory motive. See Rosati, 94 F. Supp. 3d at 717.

59. Further, Plaintiff did not allege an innuendo of any nexus between her protected activity and the adverse action. See Lutz v. Springettsbury Twp., 667 A.2d 251, 254 (Pa. Commw. Ct. 1995).

60. Plaintiff failed to allege sufficient facts to support Count II.

**Motion to Dismiss Count III – Due Process**

61. To state a claim under Section 1983 for a deprivation of procedural due process rights, a plaintiff must allege that (1) she was deprived of an individual interest that is encompassed within the United States Constitution's Fourteenth Amendment protection of life, liberty, or property; and (2) the procedures available to him or her did not provide due process of law. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985).

62. Prior to being suspended without pay, a plaintiff is entitled to notice of the charges against her, an explanation of the employer's evidence, an opportunity to present her side of the story, and adequate post-deprivation procedures. Loudermill, 470 U.S. at 546.

63. Here, on June 11, 2025, the District sent Plaintiff a drafted statement of charges with an explanation of the District's evidence against her. See Exhibit F, Loudermill Notice. The e-mail clarified that "[n]o final decision has been made, and the Board will consider whatever your client has to say at her Loudermill hearing." Id.

64. The Loudermill Notice, an undisputable authentic document, provided Plaintiff with an opportunity to respond to the allegations against her.

65. Therefore, proper due process under Loudermill was provided to Plaintiff and Plaintiff failed to allege sufficient facts to the contrary.

### Motion to Dismiss Count IV – First Amendment

66. To establish a First Amendment retaliation claim, a public employee must show that (1) her speech is protected by the First Amendment and (2) the speech was a substantial or motivating factor in the alleged retaliatory action, which, if both are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the speech had not occurred. See Gorum v. Sessoms, 561 F.3d 179, 184 (3d Cir. 2009).

67. Central to the question presented here is whether the March Letter is entitled to the protection of the First Amendment. This is a question of law. Dougherty v. Sch. Dist. of Phila, 772 F.3d 979, 987 (3d Cir. 2014).

68. Courts in this Circuit have considered several factors to determine whether an employee speaks pursuant to their official duties, including: "(1) whether the speech of the employee relates to special knowledge or experience acquired through the job; (2) whether the employee raises complaints or concerns about issues relating to their job duties up the chain of command at their workplace; (3) whether the speech falls within the employee's designated responsibilities; and (4) whether the employee's speech is in furtherance of his

designated duties, even if the speech at issue is not part of them." <u>Zucal v. Cnty. of Lehigh</u>, 660 F. Supp. 3d 334, 345(E.D. Pa. 2023) (citations omitted) (quoting <u>Kimmett v. Corbett</u>, 554 Fed. Appx. 106, 111 (3d Cir. 2014)).

69. When public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline. <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 417 (2006).

70. In <u>Garcetti</u>, the Supreme Court held that a prosecutor's internal memorandum advising his supervisors of the disposition of a pending case was speech made pursuant to his official duties. <u>Id</u>. at 420–21.

71. The Supreme Court reasoned that writing the memo was part of the prosecutor's "daily professional activities" as a government employee, distinguishable from "the kind of activity engaged in by citizens who do not work for the government." <u>Id</u>. at 422, 423. The speech in question "simply reflect[ed] the exercise of employer control over what the employer itself has commissioned or created." <u>Id</u>. at 422.

72. "Complaints made by public employees up the chain of command fall within their official capacity if the complaints concern their duties in the workplace." <u>See Zucal</u>, 660 F. Supp. 3d at 347.

73. The Third Circuit declined to extend First Amendment protection to speech where public employees were required to take the speech "up the chain of command;" <u>Foraker v. Chaffinch</u>, 501 F.3d 231, 241–43 (3d Cir. 2007) (abrogated on other grounds), or where an employee's technically-off-duty speech related to "special knowledge" or "experience"

acquired through his/her de facto job duties. <u>Gorum</u>, 561 F.3d at 185–86 (internal quotation marks omitted).

74. Here, Plaintiff was not speaking as a citizen when she wrote the March Letter to her former boss raising concerns, up the chain of command, regarding the failure to adhere to special education protocols as this was Plaintiff's subject of expertise as the Director of Pupil Services and she was " 'expected, pursuant to [her] job duties,' to make the speech that is at issue" when she learned of concerns regarding compliance with special education laws. <u>Jerri v. Harran</u>, 625 F. App'x 574, 580 (3d Cir. 2015).

75. Even if this Court finds Plaintiff spoke as a citizen in her March Letter, Plaintiff failed to demonstrate causation between her termination and her speech. When the temporal proximity of two events is "not so close as to be unduly suggestive," circumstantial evidence, such as a pattern of antagonism, may allow an inference of causation. <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 280 (3d Cir. 2000).

76. Here, Plaintiff was placed on administrative leave approximately two months after the March Letter. The temporal proximity of the two events is not so close as to be unduly suggestive of a retaliatory motive. Further, Plaintiff was encouraged to report any concerns by Defendant Gibson and the District's concerns with Plaintiff have been consistent based on multiple investigations and documentation. <u>See</u> <u>Arnett v. Kennedy</u>, 416 U.S. 134, 168 (1974) ("[T]he Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs. This includes the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch.").

77. Accordingly, Plaintiff failed to allege sufficient facts to support Count IV.

## Motion to Dismiss Count V – Breach of Contract

78. Plaintiff's employment contract permits the District to terminate Plaintiff's employment for the reasons set forth in §1122 of the Public School Code of 1949, as amended. See Exhibit A, Employment Contract, p. 4.

79. The District terminated Plaintiff for persistent negligence in the performance of duty, willful neglect of duty, and persistent and willful violations of the laws of this Commonwealth in accordance with §1122 of the Public School Code. See 24 P.S. § 11-1122, see also Exhibit G, Plaintiff's Adjudication.

80. The District only needs to demonstrate that Plaintiff's actions constituted one or more of the statutorily enumerated acts. Horton v. Jefferson Cnty–Dubois Area Vocational Tech. Sch., 630 A.2d 481, 483 (Pa. Commw. Ct. 1993).

81. Plaintiff is a mandated reporter under the Child Protective Services Law ("CPSL"). See 23 Pa.C.S.A. § 6311(a)(4).

82. Mandated reporters are required to immediately report suspected child abuse. See 23 Pa.C.S.A. § 6313.

83. As the Pennsylvania Secretary of Education ("the Secretary") acknowledged, "[w]ith respect to the various duties educators must fulfill, the highest priority must be placed on the health, safety, and welfare of students." See Barry v. McKeesport Area Sch. Dist., TTA No. 02-25, p. 9 (Pa. Dep't of Educ. September 22, 2025).

84. The law does not require any fact-finding investigations to verify the allegations of child abuse prior to reporting the suspected abuse to Children and Youth Services. See Heinrich v. Conemaugh Valley Mem'l Hosp., 648 A.2d 53, 57 (Pa. Super. 1994) (any pre-reporting investigation impedes the purpose of the CPSL); see also Brozovich v. Circle C Grp.

Homes, Inc., 548 A.2d 698, 700 (Pa. Cmwlth. 1988)(the CPSL "does not envision any pre-reporting investigation").

85. The Secretary has upheld terminations of professional employees for their failure to report suspected child abuse. See Kostoff v. Delaware County Intermediate Unit, TTA No. 02-22, (Pa. Dep't of Educ. March 7, 2023) (professional employee's failure to immediately report suspected sexual abuse constituted willful neglect under the School Code); see also Barry, No. 02-25, p. 10 (finding that a professional employee's failure to report suspected child abuse created just cause under § 1122 of the School Code to terminate the employee's employment despite the employee's exemplary work history).

86. Plaintiff disregarded her duties to immediately report suspected child abuse latest on November 16, 2024 when she received information that autistic non-verbal students were unlawfully restrained, verbally mistreated and mocked, prevented from drinking water, and permitted to remain nude and masturbate in the classroom and the bathroom without any attempts to preserve dignity and privacy.

87. Under the CPSL, each mandated reporter has a duty to report suspected child abuse. The fact that a Childline report was later made by former Superintendent Yanni on November 20, 2024 does not absolve Plaintiff of her culpability.

88. As Plaintiff acknowledged, she never made a Childline referral in violation of the CPSL. Plaintiff's failure to immediately report to Childline suspected child abuse constitutes just cause to terminate her employment.

89. Further, Plaintiff continued to willfully and negligently disregard her duties as the Director of Pupil Services by failing to ensure appropriate procedures were followed upon receiving

validated findings on December 12, 2024 that restraints were utilized in the Classroom in accordance with CBSD Policy 113.2 and 22 Pa. Code § 14.133(c)(5).

90. Plaintiff failed to report the use of restraints to PDE in violation of 22 Pa. Code § 14.133(c)(5).

91. Plaintiff further neglected her duties by failing to schedule an IEP meeting, failing to revise a student's IEP, and failing to inform the parents of the use of restraints in the Classroom in accordance to her duties under Policy 113.2, and in violation of 22 Pa. Code §14.133(c)(1) and 34 CFR § 300.324(b)(1)(ii).

92. As a result of the significant non-compliance, PDE directed Plaintiff as a special education administrator to receive training. See Exhibit E, PDE RISC Report, p. 6.

93. In March 2025, Plaintiff willfully neglected her duties by failing to obtain the approval of the Board before attending outside speaking engagements in violation of her employment contract.

94. Terminating Plaintiff's employment was not only consistent with the Public School Code, but a necessary response to Plaintiff's egregious misconduct.

95. Accordingly, Plaintiff failed to allege a breach of contract claim because she does not deny the actions that led to her termination, specifically that (1) she did not report the suspected child abuse on November 16, 2024, (2) she did not report the use of restraints to PDE and failed to schedule the IEP meeting to revise the student's IEP and inform the parents of the use of restraints in accordance with her responsibilities as the Director of Pupil Services, and (3) she did not obtain approval from the Board before participating in a speaking engagement.

**WHEREFORE,** Defendants respectfully request the dismissal of Plaintiff's Complaint for failure to state a claim upon which relief can be granted in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully,

Peter Amuso, Esquire
Attorney ID No. 80182
Leslie De Leon, Esquire
Attorney ID No. 335779
1300 Virginia Drive, Suite 405
Fort Washington, PA 19034
Tel: (215) 633-1890
*Attorney for Defendants*