**Pennsylvania Department of Education**

**February 10, 2025**

## Restraint Information System Collection (RISC) Investigation Report

| | |
|---|---|
| Educational Setting: | Jamison Elementary School |
| Local Educational Agency (LEA): | Central Bucks School District |
| Restraint Investigation Dates: | Wednesday, January 22, 2025, and Thursday, January 23, 2025 |

**Summary:**

The Bureau of Special Education (BSE) initiated an on-site fact-finding investigation at Central Bucks School District (CBSD) on Wednesday, January 22nd, and Thursday, January 23rd, 2025, based on media reports of alleged inappropriate restraints conducted by a Teacher and a Paraeducator in the Low Incidence Autism Classroom 119 (Room 119 AS Classroom) at Jamison Elementary School (JES) during the 2024-2025 school year. There were five students in the classroom from September until January, and there are currently four students in the classroom as one of the students transferred to another classroom.

**Regulatory Reference:**

**34 CFR § 300.17 Free appropriate public education.**
Free appropriate public education or FAPE means special education and related services that—
    (a) Are provided at public expense, under public supervision and direction, and without charge;
    (b) Meet the standards of the SEA, including the requirements of this part;
    (c) Include an appropriate preschool, elementary school, or secondary school education in the State involved; and
    (d) Are provided in conformity with an individualized education program (IEP) that meets the requirements of §§ 300.320 through 300.324.

**34 CFR § 300.324 Development, review, and revision of IEP.**
. . . .
    (b) Review and revision of IEPs —
        (1) General. Each public agency must ensure that, subject to paragraphs (b)(2) and (b)(3) of this section, the IEP Team—
            (i) Reviews the child's IEP periodically, but not less than annually, to determine whether the annual goals for the child are being achieved; and
            (ii) Revises the IEP, as appropriate, to address—
                (A) Any lack of expected progress toward the annual goals described in § 300.320(a)(2), and in the general education curriculum, if appropriate;
                (B) The results of any reevaluation conducted under § 300.303;
                (C) Information about the child provided to, or by, the parents, as described under § 300.305(a)(2);
                (D) The child's anticipated needs; or
                (E) Other matters.
. . . .

**22 Pa. Code § 14.133 Positive Behavior Support.**
   (a) Positive, rather than negative, measures must form the basis of behavior support programs to ensure that all students and eligible young children shall be free from demeaning treatment, the use of aversive techniques and the unreasonable use of restraints. Behavior support programs must include research based practices and techniques to develop and maintain skills that will enhance an individual student's or eligible young child's opportunity for learning and self-fulfillment. Behavior support programs and plans must be based on a functional assessment of behavior and utilize positive behavior techniques. When an intervention is needed to address problem behavior, the types of intervention chosen for a student or eligible young child shall be the least intrusive necessary. The use of restraints is considered a measure of last resort, only to be used after other less restrictive measures, including de-escalation techniques, in accord with subsection (c)(2).
   (b) Notwithstanding the requirements incorporated by reference in 34 CFR 300.34, 300.324 and 300.530 (relating to related services; development, review, and revision of IEP; and authority of school personnel), with regard to a child's behavior, the following words and terms, when used in this section, have the following meanings, unless the context clearly indicates otherwise:
      *Aversive techniques*—Deliberate activities designed to establish a negative association with a specific behavior.
      *Behavior support*—The development, change and maintenance of selected behaviors through the systematic application of behavior change techniques.
      *Positive behavior support plans*—A plan for students with disabilities and eligible young children who require specific intervention to address behavior that interferes with learning. A positive behavior support plan shall be developed by the IEP team, be based on a functional behavior assessment, and become part of the individual eligible young child's or student's IEP. These plans must include methods that utilize positive reinforcement and other positive techniques to shape a student's or eligible young child's behavior, ranging from the use of positive verbal statements as a reward for good behavior to specific tangible rewards.
      *Restraints*—
         (i) The application of physical force, with or without the use of any device, for the purpose of restraining the free movement of a student's or eligible young child's body.
         (ii) The term does not include briefly holding, without force, a student or eligible young child to calm or comfort him, guiding a student or eligible young child to an appropriate activity, or holding a student's or eligible young child's hand to safely escort her from one area to another.
         (iii) The term does not include hand-over-hand assistance with feeding or task completion and techniques prescribed by a qualified medical professional for reasons of safety or for therapeutic or medical treatment, as agreed to by the student's or eligible young child's parents and specified in the IEP. Devices used for physical or occupational therapy, seatbelts in wheelchairs or on toilets used for balance and safety, safety harnesses in buses, and functional positioning devices are examples of mechanical restraints which are excluded from this definition, and governed by subsection (d).
   (c) Restraints to control acute or episodic aggressive or self-injurious behavior may be used only when the student is acting in a manner as to be a clear and present danger to himself, to other students or to employees, and only when less restrictive measures and techniques have proven to be or are less effective.
      (1) The use of restraints to control the aggressive behavior of an individual student or eligible young child shall cause the school entity to notify the parent of the use of restraint and shall cause a meeting of the IEP team within 10 school days of the inappropriate behavior

2

causing the use of restraints, unless the parent, after written notice, agrees in writing to waive the meeting. At this meeting, the IEP team shall consider whether the student or eligible young child needs a functional behavioral assessment, reevaluation, a new or revised positive behavior support plan, or a change of placement to address the inappropriate behavior.
  (2) The use of restraints may only be included in a student's or eligible young child's IEP when the following conditions apply:
      (i) The restraint is utilized with specific component elements of positive behavior support.
      (ii) The restraint is used in conjunction with the teaching of socially acceptable alternative skills to replace problem behavior.
      (iii) Staff are authorized to use the procedure and have received the staff training required.
      (iv) There is a plan in place for eliminating the use of restraint through the application of positive behavior support.
  (3) The use of prone restraints is prohibited in educational programs. Prone restraints are those in which a student or eligible young child is held face down on the floor.
  (4) The use of restraints may not be included in the IEP for the convenience of staff, as a substitute for an educational program, or employed as punishment.
  (5) School entities shall maintain and report data on the use of restraints as prescribed by the Secretary. The report shall be reviewed during cyclical compliance monitoring conducted by the Department.
(d) Mechanical restraints, which are used to control involuntary movement or lack of muscular control of students when due to organic causes or conditions, may be employed only when specified by an IEP and as determined by a medical professional qualified to make the determination, and as agreed to by the student's parents. Mechanical restraints shall prevent a student from injuring himself or others or promote normative body positioning and physical functioning.
(e) The following aversive techniques of handling behavior are considered inappropriate and may not be used by agencies in educational programs:
  (1) Corporal punishment.
  (2) Punishment for a manifestation of a student's disability.
  (3) Locked rooms, locked boxes or other structures or spaces from which the student cannot readily exit.
  (4) Noxious substances.
  (5) Deprivation of basic human rights, such as withholding meals, water or fresh air.
  (6) Suspensions constituting a pattern under § 14.143(a) (relating to disciplinary placement).
  (7) Treatment of a demeaning nature.
  (8) Electric shock.
(f) School entities have the primary responsibility for ensuring that positive behavior support programs are in accordance with this chapter, including the training of personnel for the use of specific procedures, methods and techniques, and for having a written policy and procedures on the use of positive behavior support techniques and obtaining parental consent prior to the use of restraints or intrusive procedures as provided in subsection (c).
(g) In accordance with their plans, agencies may convene a review, including the use of human rights committees, to oversee the use of restrictive or intrusive procedures or restraints.
(h) Subsequent to a referral to law enforcement, for students with disabilities who have positive behavior support plans, an updated functional behavior assessment and positive behavior support plan shall be required.

**Individuals Interviewed:**

Interviews were conducted with nineteen (19) CBSD personnel. These individuals hold/held various positions, ranging from administration to special education classroom staff and related service providers.

Two personnel assigned to Room 119 AS Classroom were unavailable for an interview.

**Interview Information:**

Seven (7) interviewees witnessed two students of the five students (Student 1 and Student 2) seated at desks in Room 119 AS Classroom and the desks being used to wedge the students in their chairs against the wall, restraining their free movement and not allowing them to get them out of their seats. It was reported that the desks were held in place either by staff sitting on top of the desk or staff holding the desk with their hands or feet. This was reported to happen multiple times throughout each school day and would range from 20-40 minutes in duration on each occasion. This was used to deter their behaviors of hitting and disrobing. None of the restraints were reported to the BSE within the Restraint Information System Collection Program (RISC).

Four (4) interviewees witnessed on multiple occasions, Student 1's water intake being denied or limited when the student requested a drink to reduce the frequency of urination.

Three (3) interviewees reported that at the monthly communication meetings, it was determined that the water requests would be utilized as functional communication practice for Student 1, and that water would not be withheld when requested by Student 1.

**Review of Documents:**

- For the students in the Autistic Support Classroom:
    - IEP
    - Positive Behavior Support Plan (PBSP)
- CBSD Physical Restraint Reporting Procedures
- CBSD Policy 113.1 Discipline of Students with Disabilities
- CBSD Policy 113.2 Behavior Support
- CBSD K-12 Special Education and Paraprofessional Professional Development 2023-2024
- Crisis Prevention Institute (CPI) Jamison staff training list (2024-2025)
- Professional Development and Training Documentation for requested CBSD employees
- Special Education Department Meeting Agenda – September 2024
- Written input about the October 11, 2024 incident from CBSD personnel.
- CBSD Paraprofessional Trainings for 2024-2025
- Training documents related to restraint procedures provided by CBSD

**File Review Information:**

Files for the five (5) students enrolled in the classroom during the 2024-2025 school year were reviewed. Three of the five students had PBSPs in addition to their IEPs. The behaviors and consequences witnessed by CBSD personnel, and reported by CBSD personnel during the staff interviews, did not align with the PBSPs of Student 1 and Student 2.

Monthly communication meetings were reported as happening with Student 1's IEP team to discuss the student's progress and make changes to the student's program. However, the only IEP revision for the 2024-2025 school year was made to the IEP on January 2, 2025, in preparation for Student 1's transition to a new classroom. In addition, it was reported that a disrobing plan was developed for Student 1 based on his increased disrobing behaviors in the classroom. The disrobing plan and the increased disrobing were not mentioned in Student 1's IEP. Lastly, it was reported that the water requests by Student 1 would be utilized as functional communication practice, and that water would not be withheld when requested by Student 1. The use of requesting water as a functional communication skill was not mentioned in Student 1's IEP.

There was no evidence of an IEP meeting held within 10 school days or a waiver signed by the parents relinquishing their right to an IEP meeting following the use of restraints.

**Findings:**

1. The LEA used restraints during the 2024-2025 school year when Room 119 AS Classroom staff used desks to wedge Student 1 and Student 2 in their chairs against the wall, thereby applying physical force to them to restrain their free movement.

2. The LEA inappropriately used aversive techniques for handling behavior when Room 119 AS Classroom staff denied Student 1's access to water to deter him from urinating and put Student 1 and Student 2 in spaces from which they could not readily exit to deter them from hitting and disrobing, as prohibited by 22 Pa. Code § 14.133(e).

3. The LEA failed to report the restraints that occurred in Room 119 AS Classroom to the BSE, as required by 22 Pa. Code § 14.133(c)(5).

4. The LEA failed to follow appropriate procedures, such as conducting an IEP meeting within 10 school days of the restraints or obtaining the parents' waiver of their rights to an IEP meeting upon using restraints in Room 119 AS Classroom, as required by 22 Pa. Code § 14.133(c)(1).

5. The LEA failed to ensure that Student 1's IEP team revised his IEP, as appropriate, to address his behaviors, as required by 34 CFR § 300.324(b)(1)(ii), when the IEP team discussed the student's progress and IEP revisions during monthly communication meetings but did not revise his IEP.

6. The LEA failed to implement the PBSPs of Student 1 and Student 2, as required by 34 CFR § 300.17, when the students were restrained.

**Conclusion:**

CBSD failed to demonstrate compliance with the requirements of 34 CFR § 300.17 (related to free appropriate public education), 34 CFR § 300.324 (related to development, review, and revision of IEP), and 22 Pa Code § 14.133 (related to positive behavior support).

**Corrective Action:**

1. The Superintendent or Designee shall report the restraints that occurred in Room 119 AS Classroom that have not been reported to the BSE in RISC.

2. The Superintendent or Designee shall provide training(s) and a follow-up memorandum/email to all relevant CBSD personnel, including the CBSD personnel involved in this complaint, administrators, and special education and related service personnel, in the utilization of positive behavior supports, de-escalation techniques, appropriate responses to student behavior that may require immediate intervention, required procedures following the use of restraint, and the prohibition of aversive techniques of handling behavior, as per 22 Pa. Code § 14.133.

3. The Superintendent or Designee shall develop and provide training on BSE's RISC reporting procedures. The training shall address de-escalation and restraint procedures, proper completion of RISC forms, and reporting in RISC when a student is involved in a restraint.

4. The Superintendent or Designee shall provide training and a follow-up memorandum/email to all relevant CBSD personnel on the requirements for review and revision of IEPs as per 34 CFR § 300.324(b)(1)(ii)(C-E).

5. The IEP teams shall consider if any compensatory education is owed to Student 1 and Student 2 due to the LEA's failure to implement their PBSPs.

6. Room 119 AS Classroom staff shall participate in customized technical assistance for PBSPs with the Pennsylvania Training and Technical Assistance Network (PaTTAN).

7. The JES Principal shall attend the Principals Understanding How to Lead Special Education (PULSE) through PaTTAN.

**Verification of Completion of Corrective Action:**

As verification of completion, the Superintendent or Designee will forward the following documents to Casey B. Marsh, 607 South Drive, 3rd Floor, Harrisburg, PA 17120, or to cbmarsh@pa.gov, on or before **April 25, 2025**:

- Copies of the memorandum/email, training agenda(s), and sign-in sheets/electronic attendance records of the participation of all relevant CBSD personnel, including the CBSD personnel involved in this complaint, administrators, and special education and related service personnel, in the utilization of positive behavior supports, de-escalation techniques, appropriate responses to student behavior that may require immediate intervention, required procedures following the use of restraint, and the prohibition of aversive techniques of handling behavior, as per 22 Pa. Code § 14.133.

- A copy of the RISC reporting procedures and documentation of training in the form of training agendas, presentations/hand-outs, and sign-in sheets.

- Copies of the memorandum/email, training agenda(s), and sign-in sheets/electronic attendance records of the participation of all relevant CBSD personnel on the requirements for review and revision of IEPs, as per 34 CFR § 300.324(b)(1)(ii)(C-E).

- A copy of the Notice of Recommended Educational Placement/Prior Written Notice (NOREP/PWN) presented to the parents of Student 1 and Student 2 after their IEP team considers if any compensatory education is owed due to the failure to implement PBSPs.

- Verification of Room 119 AS Classroom staff's receipt of customized technical assistance for PBSPs with PaTTAN.

- Verification of the JES Principal's attendance at PULSE training through PaTTAN.

ENCLOSURES: Basic Education Circular (BEC) – Special Education Compliance
               BEC – Use of Restraints for Students with Disabilities
               BSE RISC Program Guidelines updated July 2023

cc:  Dr. Steven Yanni, Superintendent, CBSD
     Alyssa Wright, Director of Pupil Services, CBSD
     Kathleen Veisz, Supervisor of Special Education, Jamison Elementary School, CBSD
     Dave Heineman, Principal, Jamison Elementary School, CBSD
     Alyse M. Watson – Chief, Division of Monitoring and Improvement – East
     Casey B. Marsh – Special Education Advisor, Division of Monitoring and Improvement – East
     Jill Condo – Special Education Advisor, Division of Monitoring and Improvement – East
     Central File